# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JASON M. SEEBA,
                Appellant,

                    v.

DEPARTMENT OF JUSTICE,
                Agency.

DOCKET NUMBER
PH-0752-17-0162-I-1

DATE: February 21, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Raymond C. Fay, Esquire, Washington, D.C., for the appellant.

Jenifer Grundy Hollett, Esquire, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt issues a separate dissenting opinion.

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed his removal from the Federal service. For the reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

¶2    The appellant was employed as a GS-11 Supervisory Correctional Officer (Lieutenant) with the agency's Bureau of Prisons.  Initial Appeal File (IAF), Tab 4 at 18, 122.  On May 27, 2015, there was an incident during which the appellant purportedly used excessive force to subdue a noncompliant inmate and thereafter provided inaccurate information in reporting the incident.  *Id.* at 56-58.  In late August or early September 2016, the appellant provided to the warden a lengthy memorandum outlining his career with the agency, his experiences surrounding the 2008 death of a fellow Correctional Officer, his motivations for becoming a Lieutenant, and his experience with the agency's use of force policy.[2]  *Id.* at 45-54.

¶3    On October 18, 2016, the agency issued the appellant a proposal notice, charging him with failure to follow the agency's use of force policy and providing inaccurate information on a Government document.  *Id.* at 56-58.  The first sentence of the notice stated that, "I propose you be removed from your position of Supervisory Correctional Officer (Lieutenant), GS-007-11."  *Id.* at 56.  The proposal notice subsequently stated that "[i]f this proposal is sustained, your removal would be fully warranted and in the interest of the efficiency of the service."  *Id.* at 59.  The proposal notice also stated that the appellant could reply to the deciding official orally, in writing, or both and that any reply had to be received by the deciding official within 15 work days.  *Id.*

¶4    The proposing official testified that an agency human resources manager wrote the notice,[3] that it was his understanding that he was proposing that the appellant be demoted to the Correctional Officer position, and that he did not

---

[2] In the memorandum, the appellant also admitted that during the incident he said things that had "no place in a professional environment," and that he apologized for that.  IAF, Tab 4 at 54.

[3] The human resources manager indicated that his assistant drafted the proposal notice.  Hearing Transcript at 153 (testimony of the human resources manager).

realize until he talked with the deciding official that the appellant's removal from the Federal service was a possibility. Hearing Transcript (HT) at 125-28, 131-32, 141 (testimony of the proposing official). The proposing official specifically testified that, while giving the appellant the proposal notice, he told the appellant that he was proposing his removal from a supervisory position and that he would become an officer. *Id.* at 131-32, 141 (testimony of the proposing official). The deciding official similarly testified that, from his conversations with the proposing official, it was his understanding that the proposing official "maybe just [wanted the appellant] removed from the lieutenant's job," as opposed to being removed from the Federal service. *Id.* at 188-89 (testimony of the deciding official).

¶5 The appellant's oral reply took place on October 31, 2016. IAF, Tab 4 at 23. He was not represented. The appellant testified that, at the beginning of the oral reply meeting, he was "floored, stunned, shocked," to learn that he was facing removal from the Federal service. HT at 283 (testimony of the appellant). The deciding official also testified that the appellant "was pretty surprised" to learn, at the oral reply meeting, that his removal from the agency was a possible penalty. HT at 190 (testimony of the deciding official).

¶6 After his oral reply, the appellant resubmitted a copy of the memorandum he submitted in late August or early September 2016 and included a transmittal memorandum stating that he was requesting that the memorandum be considered in determining what discipline he would receive. IAF, Tab 4 at 55. The appellant also apologized for submitting the information "at this later date," but indicated that he was initially informed that he was facing a demotion from his Lieutenant position but that he had been advised that day that he was facing removal from

the agency.[4]  *Id.*  The appellant concluded that, although demotion is a serious repercussion, removal "is a very different scenario."  *Id.*

¶7    The deciding official issued a decision removing the appellant effective January 3, 2017.  *Id.* at 18-22.  This appeal followed.  IAF, Tab 1.  The appellant challenged the charges on the merits, argued that the penalty was unreasonable, and asserted that he was denied due process when the proposing official informed him that he was facing a demotion and he learned for the first time at the oral reply that he was facing removal.  *Id.* at 9-14.

¶8    After holding the appellant's requested hearing, the administrative judge sustained the charges, denied the appellant's affirmative defense, determined that the agency established nexus, and found the penalty to be reasonable.  IAF, Tab 36, Initial Decision (ID).  In finding that the agency afforded the appellant minimal due process before effecting his removal, the administrative judge reasoned that "[t]he appellant's oral and written responses reflect that he was aware of the nature of the charges and afforded an opportunity to substantively respond to the proposal notice."  ID at 18.

¶9    On review, the appellant again challenges the charges on the merits, argues that he was denied due process, and asserts that the penalty was unreasonable.  Petition for Review (PFR) File, Tab 1.  The agency has filed a response opposing the petition, and the appellant has filed a reply to the agency's response.  PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶10    When, as here, a public employee has a property interest in his continued employment, the Government cannot deprive him of that interest without due

---

[4] Although the appellant's statement in the transmittal memorandum suggests that it was written on October 31, 2016, the date of the oral reply, the memorandum is dated November 4, 2016, and bears a notation that it was received on that date.  IAF, Tab 4 at 55.  The record shows that the deciding official considered the written reply.  *Id.* at 19.

process.  *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 (1985).  The U.S. Supreme Court has described the requirements of due process as follows:

> The essential requirements of due process . . . are notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.  The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

*Id.* at 546.  As the Court explained in *Loudermill*, the need for a meaningful opportunity for the employee to present his side of the story is important for two reasons.  First, an adverse action "will often involve factual disputes," and consideration of the employee's response is of "obvious value in reaching an accurate decision."  *Id.* at 543.  Second, "[e]ven where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect."  *Id.*

¶11          Our reviewing court, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has, as it must, followed the U.S. Supreme Court's analysis in *Loudermill,* stating that "the employee's response is essential not only to the issue of whether the allegations are true, but also with regard to whether the level of penalty to be imposed is appropriate."  *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376 (Fed. Cir. 1999).  In *Stone*, the Federal Circuit held that in some circumstances it is a due process violation for a deciding official to consider additional material regarding the reasons for the action of which the appellant was not provided notice.  *Id.* at 1376.  The Federal Circuit specifically extended the holding in *Stone* to the consideration of additional information in determining the penalty.  *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1280 (Fed. Cir. 2011).

¶12     In this appeal, it is undisputed that the agency proposing official told the appellant, as he gave him the proposal notice, that he was proposing the appellant's demotion from Lieutenant to officer.  HT at 131-32, 141 (testimony of the proposing official).  The notice itself, although perhaps clear to one versed in the intricacies of Federal employment law, was, when combined with the proposing official's statement, far from clear.[5]  The administrative judge found credible the appellant's assertion that he understood the proposal notice as proposing his demotion rather than his removal from the Federal service.  ID at 17.  The proposing official believed he was proposing a demotion, and expressed such to the appellant, who relied upon the proposing official's representations.  To be clear, this is not a case wherein the appellant unreasonably had a unilateral misunderstanding of the agency action.

¶13     Thus, when he appeared for his oral reply, the appellant was shocked and surprised.  He learned for the first time that the agency's deciding official was considering a significant additional fact—that he was facing removal from the Federal service and not just a demotion.  The deciding official did not stop the proceedings, clarify the appellant's misunderstanding, and afford him additional time to reply.[6]  The original response period set in the proposal notice expired on November 8, 2016, eight days after the appellant learned that he was facing a removal, and the appellant hastily submitted the memorandum he previously submitted as an additional reply, but that memorandum did not address the proposed adverse action.

---

[5] The proposal notice did not state anywhere that the appellant was proposed for removal *from the Federal service*, which may have clarified matters in this instance.

[6] Affording the appellant a new period of time to reply would not have delayed the agency's ultimate decision as the deciding official did not issue his decision notice until over 2 months after the oral reply.  IAF, Tab 4 at 19.  The fact that the appellant, who, as noted, was not represented at the oral reply, failed to seek an extension of time to respond when he learned that he faced removal is of no import to a due process analysis.  It is the agency's obligation to afford due process, not the appellant's to request it.

¶14     Some courts have found that due process is afforded when an employee receives an opportunity to respond immediately after being informed of the possible action against him.  *See Sutton v. Bailey*, 702 F.3d 444, 446-49 (8th Cir. 2012) (finding that there need not be a delay between the notice and the opportunity to respond); *Merrifield v. Board of County Commissioners for the County of Santa Fe*, 654 F.3d 1073, 1078 (10th Cir. 2011) (same); *Staples v. City of Milwaukee*, 142 F.3d 383, 386-87 (7th Cir. 1998) (stating that oral notice contemporaneous with the opportunity to reply may, in some circumstances, satisfy due process); *Morton v. Beyer*, 822 F.2d 364, 371 n.10 (3d Cir. 1987) (same).  The Federal Circuit precedent does not embrace such a view.

¶15     In *Stone*, the court quoted with approval the Board's decision in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 304 (1981), for the proposition that "aggravating factors on which the agency intends to rely for imposition of an enhanced penalty . . . *should be included in the advance notice of charges* so that the employee will have a fair opportunity to respond to those alleged factors before the agency's deciding official."   179 F.3d at 1376 (emphasis added). Likewise, in *O'Keefe v. U.S. Postal Service*, 318 F.3d 1310, 1315 (Fed. Cir. 2002), the court held that, because due process requires that an employee be given notice of the charge and specifications against him in sufficient detail to allow the employee to make an informed reply, it was a due process violation to justify a penalty based on allegations *not set forth in the notice of proposed removal.*  Similarly, in *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1148 (Fed. Cir. 1997), the court held that "[d]ue process requires that the charges *in the notice* be set forth" with enough detail to allow the employee to make an informed response (emphasis added).   More recently, in a nonprecedential decision in *Howard v. Department of the Air Force*, 673 F. App'x 987, 989 (Fed.

Cir. 2016),[7] the court described its holding in *Ward* as explaining that "due process violations occur when an agency's removal decision is based on factors *not included in the notice of proposed removal*"[8] (emphasis added).

¶16    Consistent with the precedent set forth above, the Board also has recognized that when an agency intends to rely on aggravating factors in determining the penalty, such factors should be included in the *advance notice of adverse action* so that the employee will have a fair opportunity to respond to those factors before the agency's deciding official.  *Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 12 (2012); *Solis v. Department of Justice*, 117 M.S.P.R. 458, ¶ 7 (2012); *Lopes v. Department of the Navy*, 116 M.S.P.R. 470, ¶ 5 (2011).  The Board has recognized that a reply period as short as 5 days may pass constitutional muster, provided that the employee received prior written notice of the proposed separation.  *McCormick v. Department of the Air Force*, 98 M.S.P.R. 201, ¶ 3 (2005).  Here, however, in issuing the advance notice of a proposed adverse action, the agency misled the appellant (and apparently the proposing official as well) about the essential nature of the adverse action that it was proposing and only corrected that misinformation at the oral reply.  As the Federal Circuit has held in the context of involuntary resignation, "[a] decision made with blinders on, based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process."  *Middleton v. Department of Defense*, 185 F.3d 1374, 1382 (Fed. Cir. 1999) (internal quotation marks omitted); *see Covington v. Department of Health and Human Services*, 750 F.2d 937, 943 (Fed. Cir. 1984) (explaining that the agency's failure to

---

[7] The Board may follow a nonprecedential decision of the Federal Circuit when, as here, it finds its reasoning persuasive.  *LeMaster v. Department of Veterans Affairs*, 123 M.S.P.R. 453, ¶ 11 n.5 (2016).

[8] The Federal Circuit has articulated the principles stated in the precedential decisions set forth above in other nonprecedential decisions.  *See Brewer v. Department of Defense*, 249 F. App'x 174, 176 (Fed. Cir. 2007); *Allen v. U.S. Postal Service*, 99 F. App'x 924, 927 (Fed. Cir. 2004).

provide the appellant with proper notice regarding his appeal rights precluded him from making an informed choice).

¶17 In sum, consistent with the binding Federal Circuit precedent set forth above, we find that the agency's removal action was implemented without providing the appellant, a tenured Federal employee, the required constitutional due process. Therefore, the agency's action must be reversed until such time as the agency implements a constitutionally correct adverse action. *See Stone*, 179 F.3d at 1376-77.[9]

## ORDER

¶18 We ORDER the agency to cancel the appellant's removal effective January 3, 2017. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶19 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶20 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has

---

[9] Considering that the proposing official intended only to propose a demotion from the supervisory position, it remains to be seen as to whether a new proposal would contain the same proposed penalty. Either way, the appellant should have the ability to raise the fact that the proposing official intended only to demote him, as this could have been a consideration in the application of the *Douglas* factors.

taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶21    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶22    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT**
**REGARDING YOUR RIGHT TO REQUEST**
**ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS[10]**

This Final Order constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and

to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                                   /s/ for
                                        ─────────────────────────
                                        Jennifer Everling
                                        Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.

¶1      For the reasons explained below, I respectfully dissent from the majority opinion in this case.

¶2      By letter dated October 18, 2016, the proposing official notified the appellant: "I propose you be removed from your position of Supervisory Correctional Officer." Initial Appeal File (IAF), Tab 4 at 56. The agency afforded the appellant 15 working days, until November 8, 2016, to reply orally, in writing, or both. *Id.* at 59. Prior to the issuance of the proposal letter, the appellant had already submitted a memorandum dated August 24, 2016, purporting to provide his "written response to the charges" against him. *Id.* at 45-54. The appellant also gave an oral reply on October 31, 2016, during which he and the deciding official discussed his response to the charges against him in detail. *Id.* at 23-28.

¶3      At the start of his oral reply, the appellant was informed, as was stated in the written proposal notice, that the recommended penalty was removal from Federal service. Hearing Transcript (HT) at 190, 283 (testimony of the appellant and deciding official). The appellant testified he was in "disbelief" and "wasn't prepared to hear that" because of information the proposing official had provided to him. HT at 283-84. Specifically, it is undisputed that when the proposing official presented the proposal letter to the appellant, he told the appellant that the proposal was only to demote him from a supervisory position and not to remove him from Federal service. HT at 141 (testimony of proposing official). The administrative judge found credible the appellant's assertion that he initially misunderstood the nature of the action proposed against him. Initial Decision

(ID) at 17. Even accepting that credibility finding, I disagree with my colleagues that the appellant was denied due process as a result of his initial confusion.

¶4        The essential requirements of due process are notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, [470 U.S. 532](#), 546 (1985). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an *opportunity* to present his side of the story and reasons why the proposed action should not be taken. *Id.* (emphasis added). To require more than this prior to removal would intrude to an unwarranted extent on the Government's interest in quickly removing an unsatisfactory employee. *Id.* As our reviewing court has explained, the requirement that an employee be given an opportunity to present his side of the story is not a guarantee that the employee must present his story to the agency prior to removal. *Darnell v. Department of Transportation*, [807 F.2d 943](#), 945 (Fed. Cir. 1986). "An *opportunity to present* is quite different from a *presentation in fact*." *Id.* (emphasis in original).

¶5        For instance, in *Flores v. Department of Defense*, [121 M.S.P.R. 287](#), ¶ 4 (2014), the appellant was removed following the revocation of his eligibility for access to occupy a sensitive position. The Defense Office of Hearings and Appeals (DOHA) made an initial recommendation to restore the appellant's access; however, the final decision of the Clearance Appeals Board (CAB) rejected that recommendation and upheld the revocation. *Id.*, ¶ 3. The appellant did not respond to the proposed removal action, despite being afforded the opportunity to do so. *Id.*, ¶ 11. He asserted that he did not respond because the deciding official gave him the impression that the deciding factor would be the favorable DOHA recommendation. *Id.* The Board rejected this argument, noting that by the time the proposal notice was issued, the appellant was aware of the CAB's final determination. *Id.*

¶6        It is true, as to due process, that the employee's opportunity to respond is essential not only as to the issue of whether the allegations are true, but also with

regard to whether the level of penalty to be imposed is appropriate. *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376 (Fed. Cir. 1999) (citing *Loudermill*, 470 U.S. at 543). However, here, similar to *Flores*, any misinformation the appellant may have received concerning the nature of the action proposed against him was resolved at the start of his oral reply, at which point he admittedly understood he could be removed from Federal service. HT at 283 (testimony of the appellant); IAF, Tab 4 at 55. The appellant still had the opportunity to address the matter during his oral reply, as well as a remaining 8 calendar days to provide a written reply. *See* IAF, Tab 4 at 59. As the majority acknowledges, the Board has found an even shorter reply period of 5 calendar days sufficient to satisfy minimum due process requirements. *See McCormick v. Department of the Air Force*, 98 M.S.P.R. 201, ¶ 3 (2005); *cf.* 5 U.S.C. § 7513(b)(2) ("a reasonable time, but not less than *7 days*, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer" (emphasis added)).

¶7    Significantly, on November 4, 2016 (four days after his oral reply), the appellant submitted additional documentation to the human resources (HR) manager and requested that the deciding official consider it. IAF, Tab 4 at 55. The appellant took this action based on his understanding that he was "facing removal and termination from the Bureau of Prisons" and not merely demotion. *Id.* The HR manager testified he presented this submission to the deciding official for consideration with the rest of the disciplinary file. *Id.* at 161-62, 167 (testimony of HR manager). The appellant's removal did not become effective until January 3, 2017. *Id.* at 18-22.

¶8    To the extent that the appellant believed he required more than 8 calendar days to make a meaningful reply after the misunderstanding was clarified, he could have requested an extension. *But see Pumphrey v. Department of Defense*, 122 M.S.P.R. 186, ¶ 8 (2015) (finding no due process violation where the agency denied the appellant's request for an extension beyond the 14-day reply period,

which the Board found constitutionally sufficient to meet minimum due process requirements).  He did not do so.  HT at 307.  His assertion that he "didn't think that was an option," *id.*, is belied by the proposal notice, which explicitly informed him:  "Consideration will be given to extending this time limit if you submit a written request, to the Warden, stating your reasons for desiring more time."[1]  IAF, Tab 4 at 59.  The majority finds the appellant's failure to seek an extension "is of no import to a due process analysis" because "[i]t is the agency's obligation to afford due process, not the appellant's to request it."  I disagree.

¶9     As previously stated, due process requires provision of an *opportunity* to respond, and an appellant's failure to avail himself of such an opportunity does not mean that his due process rights were violated.  *See Darnell*, 807 F.2d at 945; *see also Flores*, 121 M.S.P.R. 287, ¶ 11 (a tenured Federal employee may waive his right to due process "provided the waiver is knowing, voluntary, and intelligently made").  While agencies must provide a meaningful opportunity to respond, employees must put forth reasonable effort in exercising that opportunity.

¶10    For example, in *Smith v. U.S. Postal Service*, 789 F.2d 1540, 1541 (Fed. Cir. 1986), the agency sent copies of its proposal notice to the petitioner and his designated union representative on March 20.  The union representative scheduled an oral reply for April 3 and the petitioner did not appear, so the union representative provided the reply on his behalf.  *Id.* at 1541-42.  The deciding official considered the union representative's reply in reaching his decision to remove the petitioner, effective April 23.  *Id.* at 1542.  Notwithstanding, the petitioner asserted the agency violated his due process rights because he did not receive the proposal notice until April 5, after the oral reply occurred, and was

---

[1] The appellant also asserts he would have hired an attorney had he known the agency was contemplating his removal from Federal service.  Petition for Review File, Tab 4 at 7.  The proposal notice informed him of his right to designate a representative, IAF, Tab 4 at 59, but he apparently did not exercise that right before his removal, even after his oral reply.

therefore "not given the opportunity to defend himself." *Id.* at 1543.  Assuming arguendo that the petitioner's claim of belated receipt was true, the Federal Circuit found he failed to establish the agency violated his due process rights. There was no evidence that the petitioner was "denied his right to constitutional due process by agency action, negligence, or design." *Id.* at 1543.  Further, there was no evidence that he had made "even a reasonable effort" to assert his right to due process after the date he alleged receiving the proposal notice; there was no evidence that he attempted to present any evidence, or that the agency prevented him from presenting any evidence. *Id.* at 1543-44.  The Federal Circuit noted that "agencies are not psychic" and, in this instance, the agency could not have known the petitioner had not received a copy of the proposal notice, particularly given that his union representative arranged and presented an oral reply. *Id.* at 1544.

¶11        In *Flores*, the Board found irrelevant the appellant's alternative assertion that he believed responding to the proposed action would be futile in light of the CAB's final determination.  [121 M.S.P.R. 287](#), ¶ 11.  Regardless of the reason for the appellant's choice not to respond, "the agency was not obligated to read his mind and schedule a response on its own initiative." *Id.*  Because there was no indication "that the appellant made a reasonable effort to assert his right to respond, or that the agency denied him his right to respond through action, negligence, or design," the Board found he was not denied due process. *Id.*

¶12        As another example, in *Harding v. U.S. Naval Academy*, 567 F. App'x 920, 924-25 (Fed. Cir. 2014),[2] the petitioner asserted the agency violated her due process rights by relying on a document she was unaware would be relied upon. However, the agency had informed her of her right to access the materials that would be relied upon, and she did not allege that she was denied the opportunity

---

[2] The Board may choose to follow nonprecedential Federal Circuit decisions it finds persuasive.  *See Dean v. Office of Personnel Management*, [115 M.S.P.R. 157](#), ¶ 14 (2010).

to review those materials or that the document at issue was not included in them. Accordingly, the Federal Circuit found her due process rights were not violated.

¶13    In the instant appeal, the appellant responded to the charges against him; was told of the nature of the proposed action 8 calendar days before the end of the reply period; submitted an additional written reply after realizing he could be removed from Federal service; and never indicated to the agency that he required additional time, despite being explicitly informed he could make such a request.

¶14    The majority seems to imply that the requirements of due process cannot be satisfied unless all information to be considered is set forth in the written proposal notice. Again, I disagree.[3] Due process is not a technical conception with a fixed content unrelated to time, place and circumstances; rather, it is flexible and calls for such procedural protections as the particular situation demands. *Gajdos v. Department of the Army*, 121 M.S.P.R. 361, ¶ 18 (2014). The root requirement of the Due Process Clause is that an individual be given an opportunity to respond before he is deprived of any significant property interest, including a meaningful opportunity to invoke the discretion of the decisionmaker before the termination takes effect. *Loudermill*, 470 U.S. at 542-43 (citations omitted). In short, the ultimate question is whether the

---

[3] In any event, the agency's written proposal was to remove the appellant from his "position of Supervisory Correctional Officer." IAF, Tab 4 at 56. The written notice neither referenced a proposed demotion nor specified any alternate position to which the appellant might be reassigned. *See generally id.* at 56-59. In fact, in addition to noting that the appellant's actions were "not consistent with the manner in which a correctional supervisor should behave," the proposal notice also expressed concern that the appellant may not be "one to whom the care, custody, and correction of federal criminal offenders may be entrusted," suggesting that the concern extended beyond the appellant occupying a Lieutenant role and included him occupying a law enforcement position generally. *Id.* at 58-59. Accordingly, I believe the required information was set forth in the proposal notice.

appellant had a meaningful opportunity to respond before the action was taken.[4]

¶15     Even if the written proposal notice was unclear, there can be no dispute that the appellant received the information to which he was entitled well before the removal action became effective over 2 months later. In my view, the fact that this clarification was given verbally during the oral reply is far from fatal, particularly where the appellant had time left to make any additional submission he desired in support of his continued employment with the agency. Under the circumstances presented here, I would affirm the administrative judge's finding that "the agency afforded the appellant minimal due process before effecting his removal." *See* ID at 17-18.

/s/
_____
Tristan L. Leavitt
Member

---

[4] Notably, there are instances when minimum due process requirements may be satisfied despite information not being included in the proposal notice. *See, e.g.*, *Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686 (2014) (although the deciding official's penalty determination was partly based on an aggravating factor not cited in the proposal notice, his consideration of this factor did not undermine the appellant's right to due process because she made a "specific and significant" response to this factor in her reply), *aff'd*, 595 F. App'x 995 (Fed. Cir. 2015); *Addison v. Department of Health and Human Services*, 46 M.S.P.R. 261, 267 (1990) (in performance based actions under chapter 43, information imparted in counseling sessions during the performance improvement period can make up for a lack of specificity in the proposal notice because the purpose of specificity in a proposal notice is to provide the employee with a fair opportunity to oppose his removal by informing him of the reasons for the proposed action with sufficient particularity to apprise him of the allegations he must refute or the acts he must justify), *aff'd*, 945 F.2d 1184 (Fed. Cir. 1991).